UNITED STATES DISTRICT COURT  FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANGELA M. D'AGOSTINO,

                         Plaintiff,                      MEMORANDUM
    -against-                                          AND ORDER
                                                                   08-CV-2344 (JG)

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                        Defendant.
-------------------------------------------------------x

A P P E A R A N C E S :

    CHRISTOPHER JAMES BOWES, ESQ.
        54 Cobblestone Drive
        Shoreham, NY 11786
        *Attorney for Plaintiff*

    BENTON J. CAMPBELL
        United States Attorney
        Eastern District of New York
        271 Cadman Plaza East
        Brooklyn, NY 11201
    By:    F. Franklin Amanat
        Assistant United States Attorney
        Claire James, law student
        *Attorneys for Defendant*

JOHN GLEESON, United States District Judge:

        On October 22, 2004, plaintiff Angela D'Agostino filed an application for a Period of Disability and Disability Insurance Benefits. She alleged an inability to work, beginning in June 30, 2004, due to the effects of what was diagnosed in October 2004 as a brain tumor. D'Agostino's application was denied on April 11, 2005, and she requested a hearing before an administrative law judge ("ALJ"). D'Agostino was represented by counsel at the July

24, 2006 hearing before ALJ Harold Rosenbaum.  On October 27, 2006, the ALJ concluded that D'Agostino was not disabled within the meaning of the Social Security Act ("the Act") because she remained able to perform her past work as a high-school guidance counselor and there had been no 12-month period in which she could not perform such work.  The Appeals Council denied D'Agostino's request for review on April 9, 2008.  The adverse decision thus became the decision of the Commissioner of Social Security ("Commissioner").

D'Agostino seeks review of that decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  Based upon the record before the Commissioner, the parties have cross-moved for judgment on the pleadings.  I heard oral argument on December 19, 2008.

Because the ALJ's decision is supported by substantial evidence in the record, I grant the defendant's motion for judgment on the pleadings and deny plaintiff's cross-motion.

BACKGROUND

A.  *D'Agostino's Medical History*

D'Agostino was born on August 31, 1950.  She worked as a guidance counselor for the New York City Public Schools from September 1983 through June 30, 2004.  She began weekly counseling with therapist Walter Blau in December 2003, and claimed that she was behaving inappropriately at work, having marital problems at home, and suffering from headaches and fatigue.  Based on similar symptoms, she began to see a psychiatrist, Dr. Lawrence Rubin, in March 2004.  Rubin diagnosed moderate major depression, single episode, and a dysthymic disorder.  He prescribed various anti-depressants and anti-anxiety drugs in increasing doses during the spring and summer of 2004.  In April 2004, D'Agostino was relieved of her caseload at her school, but she stayed on at her job until the school year ended on June 30.

On October 11, 2004, D'Agostino visited Dr. Esther Baldinger, a neurologist, who ordered an MRI of D'Agostino's brain. The October 19, 2004 MRI revealed a large tumor, and D'Agostino consulted with Dr. Paul Huang, a neurosurgeon. Huang surgically removed the tumor on November 16, 2004. On November 24, he noted that D'Agostino was recovering well from her surgery, and that her personality had improved markedly. He also observed that D'Agostino "complains of feeling tired in the afternoon, but this should improve over time." Tr. 216. Huang also directed D'Agostino to take Keppra for six months to prevent seizures

Dr. Huang completed two reports on D'Agostino's condition for the Social Security Administration ("SSA"). On December 4, 2004, he reported that D'Agostino still suffered from fatigue, and stated his opinion that D'Agostino could lift and carry 10 pounds occasionally, stand or walk for less than two hours and sit for less than six hours per day. Tr. 152-53. He also indicated that her ability to "Push and/or Pull" was limited, but did not specify how. He noted no other limitations on D'Agostino's "ability to do work-related physical activities." Tr. 153. In his March 7, 2005 report, Huang noted that D'Agostino experienced "extreme fatigue around noon-time." Tr. 179. Huang opined that D'Agostino could now lift and carry 20 pounds occasionally, stand or walk for up to two hours, and sit for up to six hour per day. He noted no other limitations. *Id.* at 179-80.

D'Agostino also received consultative evaluations from two doctors. On March 21, 2005, Dr. Andrew Ivanson, a neurologist, reported his view that, regarding D'Agostino's "ability to do work related activities[,] . . . there is no limitation for sitting, speaking, hearing, standing, walking, traveling, pushing, pulling, lifting. If there is any restriction of job-related activities because of personality changes, it should be provided by the psychiatrist." Tr. 191. On

3

March 16, 2005, Dr. Herbert Meadow, a psychiatrist, examined D'Agostino and concluded that she "does not have a psychiatric disorder that would interfere with her ability to function." Tr. 183.

B.  *D'Agostino's Application for Benefits*

As mentioned above, on October 22, 2004, D'Agostino applied for Social Security Disability Benefits, and the application was denied initially and on reconsideration after a hearing. The Appeals Counsel denied review of D'Agostino's appeal on April 9, 2008, making ALJ Rosenbaum's decision the final administrative decision in this case.

## DISCUSSION

A.  *Standard of Review*

In order to be found eligible for disability benefits, D'Agostino needed to prove before the Commissioner that, "by reason of [a] medically determined physical or mental impairment . . . which has lasted . . . for a continuous period of not less than 12 months," 42 U.S.C. § 423(d)(1)(A), she "is not only unable to do his previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d) (2)(A).[1]

On review, the question presented is whether the ALJ's decision that D'Agostino is not entitled to disability benefits is supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (per curiam). "Substantial

---

[1] Substantial work activity is defined as work that involves doing significant physical or mental activity. 20 C.F.R. § 404.1572. Work can be considered substantial even if it is done on a part-time basis or if less money is earned or less responsibility is associated with it than with previous employment. *Id.* Activities such as household tasks, hobbies, therapy, school attendance, club activities, or social programs are generally not considered to be substantial gainful activity. *Id.*

4

evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Halloran*, 362 F.3d at 31(internal quotation marks omitted).

The Commissioner employs a five-step analysis in evaluating claims for disability benefits:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If [s]he is not, the [Commissioner] next considers whether the claimant has a 'severe impairment' which significantly limits h[er] physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider h[er] disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, [s]he has the residual functional capacity to perform past work. Finally, if the claimant is unable to perform h[er] past work, the [Commissioner] then determines whether there is other work which the claimant could perform . . . . [T]he claimant bears the burden of proof as to the first four steps, while the [Commissioner] must prove the final one.

*DeChirico v. Callahan*, 134 F.3d 1177, 1179-80 (2d Cir. 1998) (quoting *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982)); *see* 20 C.F.R. § 404.1520 (2005).

The plaintiff, or claimant, carries the initial burden of proving she is disabled within the meaning of the Act. 42 U.S.C. §§ 423(d)(5), 1382c(3)(G); *see Ramos v. Apfel*, No. 97 Civ. 6435, 1999 WL 13043, at *4 (S.D.N.Y. Jan. 12, 1999) (citing *Bluvband v. Heckler*, 730

5

F.2d 886, 891 (2d Cir.1984)). In other words, the claimant bears the burden through the first four steps described above. *See Green-Younger v. Barnhart,* 335 F.3d 99, 106 (2d Cir. 2003).

B.  *The ALJ's Decision*

ALJ Harold Rosenbaum followed the five-step procedure outlined above, reaching the conclusion that D'Agostino was not entitled to disability benefits at step four. He determined, based on the medical evidence submitted and D'Agostino's testimony, that D'Agostino had not engaged in substantial gainful activity since June 30, 2004, and that she had a "severe impairment" in the form of a "history of brain tumor . . . and status post craniotomy and resection of meningioma." Tr. 39. He then found that D'Agastino did not have "an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.* He concluded, "[a]fter careful consideration of the entire record, . . . that [D'Agostino] has the residual functional capacity to perform sedentary level work. She is able to lift/carry up to ten pounds; stand/walk for two hours in an eight hour day; and sit for six hours in an eight hour day." *Id.* Because "[t]he record does not document a twelve month period of inability by the claimant to perform her past relevant work as a guidance counselor," the ALJ denied D'Agostino's claim for benefits. *Id.* at 40.

C.  *D'Agostino's Allegations of Error*

In her motion for judgment on the pleadings, D'Agostino offers four reasons why the ALJ's decision should be reversed. I address each in turn, and conclude that they are all without merit.

1.  *The Treating Physician Rule*

The ALJ must give the medical opinion of a treating physician as to the "nature and severity" of a claimant's impairments "controlling weight" so long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the case. 20 C.F.R. § 404.1527(d)(2) (2005); *Green-Younger,* 335 F.3d at 106; *see also Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999) ("[T]he ALJ cannot arbitrarily substitute his own judgment for competent medical opinion."). D'Agostino claims that the ALJ violated this rule because "it seems that Dr. Haung's [*sic*] March 2005 report, in which he reported that Ms. D'Agostino was experiencing extreme fatigue around noon-time . . . was not considered by the ALJ as there is no discussion of Dr. Huang's findings of fatigue anywhere in the ALJ's decision." D'Agostino Mem. 15.

This contention lacks merit. Although Dr. Huang's March report noted that that D'Agostino complained of "extreme fatigue around noon-time," he did not mention this symptom when asked to convey his "medical opinion regarding [D'Agostino's] ability to do work-related physical activities." Tr. 179-80. Instead, he concluded that D'Agostino could (1) occasionally carry up to 20 pounds; (2) stand and/or walk for up to two hours per day; and (3) sit for up to six hours in an eight-hour day, and otherwise had "no limitation" on her "ability to do work-related physical activities." *Id*. The ALJ explicitly relied on this report in reaching his conclusion, Tr. 40 ("Importantly, in an assessment dated March 7, 2005, Dr. Huang, the claimant's own treating physician, opined that the claimant is able to lift/carry up to twenty pounds; stand/walk up to two hours per day; and sit up to six hours per day." (internal citation omitted)); accordingly, his decision was consistent with the treating physician rule. An ALJ does

7

not run afoul of the treating physician rule simply because he fails to reiterate a specific symptom mentioned by that physician.

    2.    *Non-Exertional Limitations*

D'Agostino also argues that the ALJ erred "because the ALJ did not acknowledge her fatigue as a non-exertional limitation[]." D'Agostino Mem. 16. It is true that the ALJ did not find that D'Agostino's fatigue was a non-exertional limitation on D'Agostino's ability to work. However, in doing so, he was only following the opinion of D'Agostino's treating physician.

The report completed by Dr. Huang asked him to "Describe any limitations of physical activity as demonstrated by fatigue, palpitation, dyspnea, or angina discomfort on ordinary physical activity; include specific symptoms and *resulting limitations*." Tr. 179 (emphasis added). In response to this question, Dr. Huang wrote "extreme fatigue around noon-time." *Id.* One reasonable interpretation of this response is that Huang noted the symptom of fatigue, but found that it presented no "resulting limitation" on D'Agostino's physical activity. This interpretation is also consistent with the portion of Huang's report conveying his "medical opinion regarding [D'Agostino's] ability to do work-related physical activities"; as mentioned above, Huang opined that there were limits on D'Agostino's ability to sit, stand, and lift or carry, but no other limitations on her ability to work. Tr. 179-80. Accordingly, the ALJ's implicit conclusion that D'Agostino's fatigue did not render her unable to perform her past duties as a guidance counselor was supported by substantial evidence in the record.

    3.    *D'Agostino's Subjective Complaints*

D'Agostino further alleges that the ALJ's conclusion was based on "a deficient credibility evaluation." D'Agostino Mem. 17. This argument is unpersuasive, because there is no indication that the ALJ found D'Agostino incredible. He simply found that the condition she described did not rise to the level of disability. D'Agostino's testimony was equivocal -- while she stated that "didn't know" whether she could perform her duties as a guidance counsel again, Tr. 239, she also admitted that she had been "getting better" following her surgery, Tr. 236, that her ability to concentrate had "somewhat stabilized" by the time of the hearing, Tr. 237, and her only remaining physical complaint was that she was "just tired." Tr. 234. Furthermore, the medical evidence on the record, including two reports from her treating physician and consultative evaluations from another neurologist and a psychiatrist, strongly suggests that D'Agostino, at least following her surgery, had the physical and mental capacity to resume her former duties. The ALJ would not have to find D'Agostino's allegations incredible in order to determine that she was not disabled during the period in question, and there is no reason to believe that he categorically disregarded her testimony on that basis.

4. *The Period of Alleged Disability*

D'Agostino's final contention is that her alleged period of disability actually began in April 2004, when her caseload was reassigned, and that the ALJ erroneously "ignore[d] [her] unrebutted testimony" to that effect. D'Agostino Mem. 20. While D'Agostino did testify that her caseload was reassigned at that time, the record demonstrates that she repeatedly alleged that the "onset date" of her disability was June 30, 2004. *See* Tr. 89, 90. Furthermore, in her Disability Report, she claims that her condition rendered her "unable to work" on October 16,

9

2004. Tr. 80. Accordingly, there is substantial evidence in the record for the ALJ's finding that the alleged "onset date" of D'Agostino's disability was June 30, 2004.

Even if I assume that D'Agostino's "onset date" was April 2004, I see no reason to disturb the ALJ's conclusion. As discussed above, D'Agostino's treating physician concluded in March 2005 that D'Agostino's condition did not present physical limitations that would prevent her from performing her former duties. Thus, even if D'Agostino was unable to perform her work from April 2004 to March 7, 2005, this showing would not suffice to demonstrate that her impairment lasted for a "continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Accordingly, the ALJ's ultimate conclusion, that D'Agostino was "capable of performing past relevant work as a guidance counselor," is supported by substantial evidence in the record.

## CONCLUSION

For the reasons set forth above, defendant's motion for judgment on the pleadings is granted and plaintiff's cross-motion is denied.

So ordered.

John Gleeson, U.S.D.J.

Dated: December 29, 2008
      Brooklyn, New York